PENNSYLVANIA COMPANY

v.

NELLIE KEANE, ADMINISTRATRIX.

*Railroads—Negligence—Personal Injuries—Contributory Negligence— Evidence—Instructions.*

1.   While it is ordinarily the duty of a person about to cross a railroad track, to watch for approaching trains, a person about to take a train standing at a station waiting to receive passengers, or one alighting from a train just arrived, has a right to presume that the trains will be so run, and the road so operated, that a track between the station and that upon which said train is standing, can be safely passed.

2.   In an action brought to recover from a railroad company the pecuniary loss sustained by a widow and next of kin, through the death of her

husband, the same being alleged to have occurred through its negligence, it is improper to admit evidence as to the pecuniary circumstances of such widow at the time of the accident.

3.   This is so because the widow was legally entitled to receive support at the hands of deceased, and would, in case of his death, have had a lawful claim upon his estate, that, so far as she is concerned, the action is prosecuted for her benefit, and she is entitled to recover, although at the time of the death of deceased, she was in her own right possessed of independent means.

4.   This court holds as erroneous, an instruction setting forth that the engineer and fireman were personally liable to the defendant for any negligence which the jury should believe was committed by them at the time of the accident, and for all damages, if any, to be allowed by the jury on account thereof.

[Opinion filed July 30, 1891.]

APPEAL from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding.

Messrs. GEORGE WILLARD and F. H. TRUDE, for appellant.

Messrs. WINDES & SULLIVAN, for appellee.

WATERMAN, J.   On a dark and rainy morning in July, 1888, the rain falling so fast that it was about equal to a fog, at about twenty minutes past six, the Stock Yards dummy train stopped at a station in Chicago, near 37th street, at which was a small shanty for the accommodation of passengers, capable of holding from a dozen to fifteen persons.   Deceased and a number of others waiting for the arrival of the dummy train, as soon as it stopped, rushed out through the blinding rain to get on board.   In so doing, they crossed the track of appellant, upon which its South Chicago dummy was then approaching, at a speed variously estimated at from twenty miles an hour by some of the bystanders, to ten or twelve miles an hour by the engineer of that train.   Some of the witnesses testify that they heard no signal of its approach; others did, and the engineer declares that when about 300 feet south of the crossing, he blew two long and two short blasts, and that just as he reached 38th street he again whistled

the same way, and that the bell was ringing between 37th and 39th streets. He also declares that when he saw the people crossing in front of his engine, he did all that was possible to arrest the motion of his train.

Whether the deceased, before he attempted to cross the track, looked for an approaching train, can not be known, and whether if he had looked, in the blinding rain, he would have seen it, can not be told. What is known is, that with the Stock Yards dummy just arrived and waiting for passengers, hurrying to get on board of it, appellant's train coming from an opposite direction, passed the little station house at a rapid rate of speed, and that deceased, while endeavoring to get on board the train in which he wished to go as a passenger, was struck by the engine coming from the south and killed.

Deceased was a cooper, earning from $2.75 to $3 per day. He left three children, two under age, and his widow being appointed his administratrix, brought suit to recover the pecuniary loss sustained by her and the next of kin by his death.

The jury found for the plaintiff, and the defendant prosecutes this appeal.

The defendant insists that the evidence shows that the colliding train was exactly on time, was well equipped, and was in charge of experienced and competent men, all of whom were mindful of their duties at and before the time of the accident, and that the deceased was guilty of such culpable negligence in endeavoring to cross the track, that no recovery can be had in this action.

It is unquestionably the case that one may go upon a railroad track under such circumstances as that if he be injured in consequence thereof, he can not recover damages. The circumstances under which the deceased went upon the track of appellant in an endeavor to reach a train upon which he expected to become a passenger, were that appellant invited him so to go. Its train, which he was to take, was standing at the station; it had just arrived; it was impossible for him to get to it without crossing the track. It is a well known fact that railroad trains stop but a very short time for the reception of passengers, and deceased was therefore in a position in which, if he took that train at all, he must make

haste to do so. Appellant owed to him a duty, the duty of affording him a safe means of going to his train. It had no right, with the Stock Yards dummy just arrived and waiting for the reception of passengers, to rush its South Chicago train between the Stock Yards dummy and the station at a dangerous rate of speed. If the engineer of the South Chicago train was not informed that the Stock Yards dummy was at said station waiting for passengers, then he ought to have been so informed, and it was negligence on the part of appellant to allow him to remain in ignorance of a fact so important to human life and human safety. It must be borne in mind that in all cases of accidents of this kind, that is, accidents happening to persons about to take passage on, or alighting from a train, who are struck by another train passing along a track over which passengers necessarily have to go, that such construction and arrangement of tracks, and such running of trains is entirely for the convenience of the railroad, and is in very few, if any, instances, at all necessary; that is to say, it is almost always entirely feasible for the railroad company to provide a way of crossing its tracks by an overhead bridge or an underground tunnel, entirely safe, and that where it neglects to provide such entirely safe passage for the ingress and egress of passengers, its neglect is entirely for its own convenience.

Such safe means for crossing railroad tracks exist at almost all stations in England, and have been very generally provided in other European countries.

The Supreme Court of this State in C. & A. R. R. Co. v. Wilson, 63 Ill. 167, say: " Railroad companies are required to use all reasonable precaution for the safety of the traveling public, whether in the construction or operation of their engines and coaches, or the erection of their depots, the construction of their tracks, or the approaches to their trains. In operating such immense forces, it is their duty to use them with care, and with regard to the safety and rights of other persons. And neglect in furnishing any of the appliances to their roads, or, when furnished, if insecure and unsafe, when it could have been avoided by reasonable effort and precau-

tion, if injury results, the company will be held liable for damages resulting therefrom. It is the duty of such companies to furnish safe and convenient approaches to their passenger coaches. They have no right to invite the traveling public to occupy positions of peril." And in that case it was held that reasonable care was not exercised in the construction of a passenger platform at a station. The Supreme Court say that "those planning and executing the work were guilty of reckless and wanton carelessness." In this case, as in all others in which accidents arise under like circumstances, a question presented for consideration is, whether the arrangement of the station, tracks and approaches thereto, and the manner of the operation of its trains by the railroad company, are not such acts of negligence that the negligence of the injured party, if any, was slight as compared therewith, and the negligence of the railroad company gross. It is insisted by appellant that the deceased failed to look out or watch for the train coming from the south, and that this was such negligence upon his part as will preclude a recovery in this case. Undoubtedly, it is ordinarily the duty of a person about to cross a railroad track, to watch for approaching trains; but a person about to take a train standing at a station waiting to receive passengers, and one alighting from a train that has just arrived, have a right to presume that the trains will be so run and the road so operated that such track may be passed in safety. A passenger under such circumstances, is justified in assuming that the company has exercised such care and so regulated its trains, that the road will be free and safe for him to pass over. Baltimore & Ohio R. R. Co. v. The State of Maryland, 60 Md. 449, 463, Warren v. The Pittsburg R. R. Co., 8 Allen, 227, Chaffee v Boston & Lowell R. R., 104 Mass. p. 108–115; Patterson on Railway Accident Law, p. 257, Gaynor v. Old Colony & Newport Ry., 100 Mass. 208–212; Rogers v. The Rhymney R. Y. Co., 26 Law Times (N. S.), 879; Terry v Jewett, 78 N. Y. 338–344; Masterson v. The N. Y. Central R. R., 84 N. Y. 247.

Upon the trial of this case, the court, over the objection of the defendant, permitted the plaintiff to testify that deceased

(she being his widow) was, at the time of his death, her sole support. This evidence ought not to have been received. The action in this case was to recover for pecuniary injury only, resulting from the death of the deceased, and the damages recovered are to be distributed to the widow and next of kin, in the proportion provided by the law in relation to the distribution of personal property left by persons dying intestate. The pecuniary circumstances of the widow at the time of the accident, are, therefore, of no consequence. It is because she was legally entitled to receive support at the hands of deceased, and would, in case of his death, have had a lawful claim upon his estate, that so far as she is concerned, the action is prosecuted for her benefit, and she is entitled to recover, although at the time of the death of the deceased, she was, in her own right, possessed of independent means, so that there was no necessity for her receiving support from her husband.

But the error, in this regard, we do not think was harmful to appellant. She did not testify, and no evidence was given as to her pecuniary circumstances at the time of the trial, and if she had, we do not think that in this case a statement as to her poverty or riches would have made any difference with the verdict. The case was one in which the plaintiff was clearly entitled to recover, and in which the only real contention under the evidence could be as to the amount of damages. The testimony was that the deceased was earning from $2.75 to $3 per day, and forty-three years of age. Under this evidence the damages awarded can not be called excessive, and there is nothing in the verdict to indicate that the jury were, in the least, influenced by passion or prejudice, or by any improper evidence received upon the trial.

The court was asked to give the following as an instruction to the jury:

" The jury are instructed that the engineer and fireman of the said South Chicago train are personally liable to the defendant for any negligence which the jury shall believe was committed by them at the time mentioned in this case and for all damages, if any, which shall be allowed by the jury on account of such negligence."

We do not think this instruction should have been given. To say that the engineer and fireman are personally liable to the defendant for any negligence upon their part, is to say that they are liable for the very slightest negligence, and to leave out of consideration altogether, the question of whether the defendant had not been, in its relations to and with such engineer and fireman, itself negligent. It is very seldom that a servant is held personally liable to his master for injuries which result from failing to exercise perfect diligence and care. Perfection is not to be expected of mortals, and we are not prepared to hold that the servants of a railroad company are personally liable to it if they are guilty of any negligence, however slight; that is to say, if, in the conduct of their duties they fail to be absolutely perfect. The judgment of the court below is affirmed.

*Judgment affirmed.*

GARY, J. I concur in the result, and in what is said as to the law of this case.

Whatever may be the difficulties of timing trains to run without conflict in the suburban traffic in the neighborhood of great cities, the exceeding danger to citizens, if trains are run between station houses and trains standing at them discharging and receiving passengers, is so manifest, that no excuse can be made for such conduct. But it is not our province to prescribe the kind of precautions to be adopted for the safety of the citizen; only to declare the duty to adopt the most effectual that are reasonably practical. To go into description of them is to subject us to the imputation that we are traveling "out of our beat."

As to the testimony of the appellee that the deceased was her sole support, while in deference to the decision in C. & N. W. Ry. v. Moranda, 93 Ill. 302 (though that decision is based upon two prior cases having no bearing upon the point, being cases in which living men sued for injuries to their own persons), that testimony must be held to be wrong; and as the verdict was for the largest sum the statute permits, can hardly be said to have been immaterial; even though excessive damages were not assigned as one of the grounds in the motion

for a new trial, yet it is not error on this record. Following the question are the words, "objection, overruled and exception."

It is mere conjecture what was objected to, who objected or who excepted, and however plausible, the conjecture remains conjecture. Winona Paper Co. v. W. O. Taylor Co., 27 Ill. App. 558; Monroe v. Snow, 33 Ill. App. 230; Shedd v. Dalzell, 30 Ill. App. 356; Garrity v. Hamburger, 27 N. E. R. 11.